Dan DAVIS, Petitioner,

v.

UNITED STATES of America, Respondent.

No. 86–3179.

United States District Court, C.D. Illinois, Springfield Division.

Dec. 11, 1986.

months' imprisonment on Count II of an indictment charging the distribution of a controlled substance.

The present motion alleges, *inter alia,* that the United States Parole Commission violated the terms of Davis' plea agreement by using information concerning his prior cocaine distribution—disclosed to the Government pursuant to Davis' promise of cooperation—in its determination of his eligibility for parole.[1]

I

On February 7, 1985, a federal grand jury returned a three-count indictment charging Davis with conspiracy to deliver cocaine and with two deliveries of the drug on October 30, 1984, and December 11, 1984. The conspiracy allegedly began "no later than October 30, 1984, and continu[ed] until the date of this indictment."

Pursuant to a plea agreement entered on April 19, 1985, Davis pleaded guilty to both deliveries of the cocaine and the Government agreed to dismiss the conspiracy charge. As part of the agreement, Davis agreed to cooperate fully with the Government in its investigation of others involved in cocaine trafficking. Specifically, Davis agreed to:

> ... cooperate fully with law enforcement officials ... As part of that cooperation, the defendant specifically agrees that he will provide complete and truthful information ... he has concerning the distribution and possession of controlled substances of any kind on his part and on the part of others ...

The United States of America promised:

> The government agrees that it will not use any statement or testimony by the defendant, *either directly or indirectly, to bring additional criminal charges* against the defendant ...

Nancy Emmet Horgan, Carbondale, Ill., for petitioner.

K. Tate Chambers, Bradley W. Murphy, Asst. U.S. Attys., Peoria, Ill., for respondent.

## OPINION ORDER

MILLS, District Judge:

A question of FAIRNESS!

Did the *Government* live up to the plea agreement?

No.

Dan Davis, currently incarcerated in the federal correctional facility at Marion, Illinois, moves this Court for a correction of his sentence pursuant to 28 U.S.C. § 2255. On July 3, 1985, Davis was sentenced to 42

---

1. Pursuant to Rule 8(a) of the rules governing section 2255 proceedings, the Court has reviewed the Petitioner's motion and the Government's response thereto and finds that an evidentiary hearing is not required. In this case, the essential facts concerning the construction of the plea agreement and the Parole Commis- sion proceedings are not in dispute. We therefore decide the instant motion on the basis of the record at hand and the parties' memoranda. *Townsend v. Sain,* 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963); *Yeaman v. United States,* 326 F.2d 293 (9th Cir.1963).

And further, the United States Attorney's office agreed to:

> ... fully apprise the District Court and the United States Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him ... including all matters in aggravation and mitigation relevant to the issue of sentencing.

On April 29, 1985, Davis agreed to an interview and gave oral statements to authorities in an effort to cooperate. Thereafter, on May 10, 1985, he appeared and testified before a federal grand jury. In addition, Davis agreed and was ready to serve in a covert investigation of suspected drug dealers.

As a result of these statements made to investigators during the course of Davis' cooperation, the Government learned that Davis had been involved in the distribution of cocaine prior to 1984. The presentence investigation report contains the following summary of the Defendant's statements:

> On April 29, 1985, the defendant was interviewed by Law Enforcement Agents. He stated that he began dealing in cocaine during 1980, at which time he was buying very small amounts from Greg Gilmore. During August 1981, business began increasing. Later that year Gilmore obtained four kilograms and one pound of cocaine from Larry Patterson. Patterson was killed about one month later in an automobile accident. Gilmore kept the cocaine, with the defendant obtaining cocaine from Gilmore for sale to others. From April 1983 until December 1983, the defendant sold approximately two ounces of cocaine per week. He sold no cocaine from the Spring of 1984 until October 1984, when he resumed his sales. The original supply of Gilmore's cocaine had been depleted and a new supply of cocaine was of very poor quality. The defendant kept portions of this cocaine for his own personal use.

In the presentence report, the United States probation officer assigned to Davis' case advised the Court that under Parole Commission guidelines Davis' cospiracy and delivery behavior warranted an offense severity rating of four (4). *See* 28 C.F.R. § 2.20 *et seq.* In so doing, the probation officer apparently did not take into consideration Davis' admitted deliveries of cocaine prior to 1984. Given his "salient factor score" of 8 or 9, and an offense severity rating of 4, Davis would have been eligible for parole after 14 to 20 months.

The United States Attorney's office recommended a sentence of 60 months. At sentencing the Court noted that the recommendation seemed designed to effect a minimum term of 20 months. The Court imposed a sentence of 42 months on Count II, expressly in order to effect a 14 month period of incarceration.

In contrast to the probation officer, the Parole Commission calculated Davis' offense severity score at five (5), resulting in parole guidelines of 24 to 36 months. The Commission agreed with the probation officer's salient factor score of 8, but, unlike the probation officer, considered information about Davis' drug related activity gained pursuant to Davis' cooperation with the Government. There is no dispute that in determining Davis' offense severity score, the Parole Commission took into account the statements made by Davis during the course of his cooperation with the Government. The Government's brief states that *"[p]art of the evidence* of such conspiracy came from the statement of the defendant.in the course of his cooperation ..."  It does not, however, state whether evidence of the conspiracy existed apart from these statements.

There is some dispute as to whether the deliveries of cocaine made prior to 1984 were in fact the subject of Count I of the indictment. Davis argues that they were not, and that the only reason they are reflected in the Commission's file is because Davis himself revealed them. The Court finds it unnecessary to decide this question in light of the dismissal of Count I. The sole question is whether, given the plea agreement, the Parole Commission was

justified in using these statements to establish Davis' offense severity rating.

Considering this additional information, the Parole Commission concluded that Davis was responsible for the distribution of more than 100 grams but less than 1 kilogram of pure cocaine between 1980 and 1984. The Regional Commission imposed a term of 28 months. Davis appealed that decision to the National Appeals Board of the Commission. The Appeals Board adhered to its position that the guideline range of 24 to 36 months was warranted, but nonetheless adjusted his term downward to 24 months.

Davis' counsel has sought to obtain from the Government a statement to the Parole Commission about his cooperation. Pursuant to 28 C.F.R. § 2.63(a)(2), the Parole Commission requires such a statement before it will consider a defendant's cooperation in mitigation. That section provides:

(a) Under the limited circumstances described below, the Commission may consider as a factor in parole release decisionmaking a prisoner's assistance to law enforcement authorities in the prosecution of other offenders. The following criteria must be met:

\*     \*     \*     \*     \*     \*

(2) The assistance must be reported to the Commission in sufficient detail to permit a full evaluation to be made, and must be supported by the personal endorsement of the responsible United States Attorney or an official of equivalent rank. However, no promises, express or implied, as to a Parole Commission reward shall be given any weight in evaluating a prosecutorial recommendation for leniency.

The United States Attorney has declined, as a matter of current policy, to provide a written statement to the Parole Commission outlining Davis' cooperation.

In this action, Davis contends that the Parole Commission has acted in an arbitrary and capricious manner by defining his offense severity score to include conduct occurring between 1980 and 1983 when the plea agreement states that the Government will not use his statements to bring additional charges against him. Further, Davis contends that the United States Attorney violated the spirit of his undertaking by refusing to put into a form acceptable to the Parole Commission his acknowledgement of Davis' cooperation. The Court does not reach this second contention, as we find merit in the first.

## II

■ Action by the Parole Commission which is arbitrary or capricious is reviewable upon a motion pursuant to § 2255. *See Cox v. Benson,* 548 F.2d 186 (7th Cir.1977) (petition for a writ of habeas corpus). As pointed out by the Government, the Parole Commission's consideration of aggravating offense circumstances in formulating a defendant's parole guidelines has met with judicial approval. *See, e.g., Peak v. Petrovsky,* 734 F.2d 402 (8th Cir.1984); *Billiteri v. United States Bd. of Parole,* 541 F.2d 938 (2d Cir.1976); *McArthur v. United States Bd. of Parole,* 434 F.Supp. 163 (N.D. Ill.1976), *aff'd,* 559 F.2d 1226 (7th Cir.1977). These cases do not, however, consider the legality of using information divulged by a defendant to one arm of the Government with the expectation that the information will not later be used against him by another.

The Courts in recent years have been repeatedly confronted with difficult questions concerning the interpretation and enforcement of plea agreements. As has been recognized by the Supreme Court, the process of disposing of criminal charges "by agreement between the prosecutor and the accused ... is an essential component of the administration of justice. Properly administered, it is to be encouraged." *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). The Court also explained, however, that the process of plea bargaining itself "presuppose[s] fairness in securing agreement between an accused and a prosecutor." *Id.* at 261, 92 S.Ct. at 498. Among these principles of fairness is that "[a]ny agreement

made by the Government must be scrupulously performed and kept." *United States v. Brimberry*, 744 F.2d 580, 587 (7th Cir.1984); *United States v. Lyons*, 670 F.2d 77, 80 (7th Cir.), *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2465, 73 L.Ed.2d 1354 (1982). As stated by the high court in *Santobello*:

> This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that *when a plea rests in any significant degree on a promise or agreement of the prosecutor*, so that it can be said to be part of the inducement or consideration, *such promise must be fulfilled.*

404 U.S. at 262, 92 S.Ct. at 498 (emphasis added). *See also Mabry v. Johnson*, 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984).

The written plea agreement in this case provides that "the *government* will not use any statement or testimony by the defendant, either directly or indirectly, to bring *additional criminal charges* against the defendant ..." The Government contends that in accordance with the plain language of this paragraph of the plea agreement, no additional changes were in fact brought as a result of Davis' testimony. Davis, on the other hand, argues that this is what the Parole Commission has, indirectly, done by finding him guilty of deliveries of cocaine between 1980 and 1983, solely on the basis of his statements to investigators. The issue before the Court is whether the above language of the plea agreement is in effect a promise by the Commission not to use Davis' statements to enhance his parole guidelines.

The interpretation of plea agreements in criminal cases is governed by two somewhat conflicting, but key principles. The first is that a plea bargain is essentially a contract, "the terms of which necessarily must be interpreted in light of the parties' reasonable expectations. The resolution of each case depends upon the essense of the particular agreement and the Government's conduct relating to its obligations in that case." *United States v. Mooney*, 654 F.2d 482, 486 (7th Cir.1981).

Our circuit's adoption of a contractual analysis of plea agreements, however, is tempered by a second principle eschewing a strict construction approach to the language of a plea agreement, *United States v. Fields*, 766 F.2d 1161, 1167 (7th Cir. 1985); *United States v. Bowler*, 585 F.2d 851, 854 (7th Cir.1978), and imposing upon the Government a duty to use special care in the drafting of such agreements. *United States v. Cook*, 668 F.2d 317, 321 (7th Cir.1982). As the Court explained in *Bowler*:

> The language was included in the agreement as an indication to the defendant that these factors would in fact be considered in arriving at the recommendation as to sentence. The Government will not be allowed to avoid the obligation it thus incurred by claiming now that the language literally promises nothing to the defendant. *A plea agreement is not an appropriate context for the Government to resort to a rigidly literal approach in the construction of language.*

*Id.* at 854 (emphasis added).

The Court in *Bowler* further noted that "both to protect the plea bargaining defendant from overreaching by the prosecutor and to insure the integrity of the plea bargaining process, the 'most meticulous standards of both promise and performance must be met by prosecutors engaging in plea bargaining.'" *Bowler*, 585 F.2d at 854 (*quoting Correale v. United States*, 479 F.2d 944, 947 (1st Cir.1973)).

In sum, our circuit has consistently adhered to the view expressed by the Third Circuit in *United States v. Crusco*, 536 F.2d 21, 26 (3d Cir.1976):

> The Government ... must also clearly understand the scope and depth of its commitment and the need for precision in plea bargaining. It may reach port in the plea bargaining process but founder

there because of careless or loose language in its commitment. Once it makes a promise, *Santobello* requires strict adherence.

*United States v. Fields,* 766 F.2d at 1168.

### III

 With the aforementioned principles in mind, the Court is confronted with a plea agreement which, if strictly and literally construed, would allow one arm of the Government—the Parole Commission—to increase a defendant's period of incarceration when another arm of the Government—the United States Attorney's office—could not do so through the prosecution of additional criminal charges. Under the circumstances of this case, we do not believe that the parties could reasonably have expected this to be the result of their agreement. The extent of Davis' cooperation and the nature of the agreement bear out this view. The circumstances of the agreement clearly contemplate that the fruits of Davis' cooperation would not be used against him by the Government, be it the Parole Commission or the U.S. Attorney. Had the agreement been otherwise, it is unlikely Davis would have so incriminated himself.

Moreover, in accordance with the governing case law, the Court declines to so strictly construe the plea agreement that the Government is able to get in through the back door what it clearly cannot through the front. The integrity of the plea bargaining process is preserved by fairness. In this context fairness means that the left hand is bound by the actions of the right hand, even if each hand does not know what the other is doing. The Court has no difficulty holding the United States Parole Commission bound by a promise made in a plea agreement. Both the United States Attorney and the Parole Commission are agents of the Government and are therefore bound by what are, in effect, *Government* promises. The Parole Commission's enhancement of Davis' parole guidelines through the use of information not available for use by the prosecution is a violation of the spirit, if not the letter, of the plea agreement. *Cf. Nash v. Israel,* 533 F.Supp. 1378, 1384 (E.D.Wis.1982), *aff'd,* 707 F.2d 298 (7th Cir.1983).

In accordance with the foregoing, Petitioner's motion under § 2255 is ALLOWED. This matter is remanded to the United States Parole Commission for a redetermination of Davis' eligibility for parole consistent with the construction of the plea agreement outlined above. It is ordered that Davis be afforded a new hearing within 14 days of the entry of this order.