**Richard AUGUSTINE, Petitioner-Appellant,**

v.

**Roderick BREWER, Respondent-Appellee.**

**No. 86–2407.**

United States Court of Appeals, Seventh Circuit.

Argued April 28, 1987.

Decided May 28, 1987.

Mary Catherine Bonner, Ft. Lauderdale, Fla., for petitioner-appellant.

David C. Sarnacki, Asst. U.S. Atty., Madison, Wis., for respondent-appellee.

Before BAUER, Chief Judge, CUMMINGS and FLAUM, Circuit Judges.

CUMMINGS, Circuit Judge.

Petitioner appeals from the district court's dismissal, without an evidentiary hearing, of the instant habeas corpus petition. For the reasons set forth below, we affirm.

## I.

Petitioner is currently incarcerated in federal prison in Alabama following his conviction and sentencing on narcotics charges in Florida district court. At the time his habeas petition was filed, however, petitioner was in federal custody in Wisconsin and thus his petition is properly before this court.

In December 1984, petitioner entered into a plea agreement with the government under the terms of which he entered a plea of guilty to Count Twelve of the indictment returned against him, namely, one count of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a). For its official version of his offense, the government in turn agreed that "the facts set forth in [conspiracy] Count Two of the indictment and ... the accusations against [petitioner] in this pleading fairly represent the overall severity of the underlying offense behavior." Count Two of the indictment alleged that over a four-year period, from May 1978 until October 1982, sixteen individuals, including petitioner, conspired to import marijuana into the United States. The conspiracy alleged in Count Two consisted of 84 overt acts, 10 specifically involving petitioner, some of which arguably implicate petitioner in the planning stages of the importation scheme.

Petitioner was sentenced in Florida district court in January 1985 to 12 years in prison. On August 6, 1985, petitioner had his first parole hearing which resulted in a Notice of Action from the Parole Commission setting petitioner's offense severity rating at Category Six and fixing his presumptive parole date after 72 months (six years) of imprisonment. Release after 72 months requires petitioner to serve 20 months in excess of the usual 40–52 month release guideline for a Category Six offense. *See* 28 C.F.R. § 2.20. Petitioner appealed the Parole Commission's decision to the National Appeals Board which upheld the decision.

Having exhausted his administrative remedies, petitioner filed the instant habeas petition in the district court. On appeal, petitioner challenges the Parole Commission's decision on five separate grounds, all of which were raised unsuccessfully in the district court:

1. The plea agreement between petitioner and the government was breached when the Commission considered information not contained in Count Two of the indictment in determining petitioner's offense severity rating.

2. The Commission's decision to set a presumptive release date for petitioner beyond the Commission's own guidelines was not supported by the facts, as limited by the terms of the plea agreement.

3. The Commission improperly "double-counted" when computing petitioner's release date—that is, the Commission used the same information to increase petitioner's offense severity

rating and to extend his period of incarceration beyond the period indicated in the Commission's guidelines.

4. The Commission applied its guidelines to petitioner and a co-defendant dissimilarly.

5. Petitioner was not given notice or an opportunity to challenge the Commission's claim that his involvement in marijuana trafficking continued for a period of four years.

The district court considered petitioner's allegations and dismissed the petition, concluding that "there are no outstanding factual issues and that a decision can be reached without a hearing." Specifically, the district court held that the Commission did not abuse its discretion in considering all the overt acts described in Count Two, as opposed to only those overt acts involving petitioner, in determining petitioner's offense severity rating. Similarly, the court concluded that the Commission was justified—given the duration of the conspiracy, the quantity of marijuana involved and petitioner's role in the scheme—in setting a release date for petitioner beyond the guidelines. The court also found no abuse of discretion on the part of the Commission in setting an earlier release date for petitioner's co-defendant. Finally, the district court held that the Commission had provided petitioner with adequate notice and ample opportunity to respond to the assertion that petitioner's involvement in criminal activity lasted some four years. This appeal followed dismissal below.

## II.

■ Before separately considering petitioner's allegations, it is instructive to note that Congress has delegated sole discretionary authority to grant or deny parole to the United States Parole Commission and, consequently, the Commission's decisions are subject to appellate review only for abuse of discretion or arbitrary and capricious action. *Romano v. Baer*, 805 F.2d

268, 270 (7th Cir.1986); *Solomon v. Elsea*, 676 F.2d 282, 290 (7th Cir.1982).

We now consider separately Augustine's five attacks on the Commission's decision.

A. The Parole Commission breached the plea agreement by considering factors in addition to the specific allegations concerning petitioner in Count Two.

The gravamen of petitioner's first allegation is that whereas petitioner was under the impression that his plea agreement expressly limited the extent, duration and quality of his participation in criminal activity to the allegations contained in conspiracy Count Two of the indictment, the Parole Commission went beyond the accusations made in that Count in determining his offense severity rating. Specifically, the Commission's alleged breach of the plea agreement is claimed to have resulted from (i) the Commission's attributing to petitioner a leadership role in the conspiracy and (ii) the Commission's treating petitioner as vicariously responsible for all of the acts of his co-conspirators, including acts performed by the co-conspirators prior to and subsequent to petitioner's actual involvement in the conspiracy.

■ Neither in his brief nor at oral argument was petitioner able to point to any express representations made to him or to any specific reference in the plea agreement itself indicating that the Parole Commission was a party to or was in any way intended to be bound by the terms agreed upon between himself and the government. Instead, petitioner states that it was his "understanding" that the agreement would limit the Commission's ability to consider any details of his offense other than those with which he was specifically identified in Count Two. The Supreme Court's holding in *Santobello v. New York*,[1] 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), upon which petitioner relies, simply does not apply where, as here, the prosecution did not expressly, in

---

1. In *Santobello,* the Supreme Court held that, "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled."

writing or orally, make representations to petitioner concerning his future prospects for parole. *United States ex rel. Robinson v. Israel,* 603 F.2d 635, 637–638 (7th Cir.1979) (en banc), *cert. denied,* 444 U.S. 1019, 100 S.Ct. 675, 62 L.Ed.2d 650 (1980).[2] Viewed objectively, the plea agreement between petitioner and the government contains nothing to indicate an intent to bind the Parole Commission; consequently, there was no breach of the agreement.

Since the Parole Commission was thus free to consider the entirety of the circumstances surrounding the marijuana conspiracy of which petitioner was a part, appellate review is limited to whether the facts and circumstances taken into account by the Commission in arriving at an offense severity rating of Category Six were appropriately considered. The Commission explicitly stated that it considered the total scope of petitioner's offense as detailed in conspiracy Count Two of the indictment. The Commission did not limit its consideration of petitioner's involvement to only those overt acts naming him but instead treated petitioner as being vicariously responsible for all of the acts committed by his co-conspirators between May 1978 and October 1982 and, in addition, attributed to him a leadership role in the conspiracy's operation.

■ Turning first to the characterization of petitioner's involvement in the conspiracy, the Commission did not abuse its discretion in concluding that petitioner had assumed a leadership position in the conspiracy. The probation department's presentence investigation attributed to petitioner a "high level" of involvement in the conspiracy[3] and the overt acts detailed in the indictment arguably support the inference that petitioner was active in the planning and implementation of the conspiracy's criminal endeavors. Parole Commission regulations provide that evidence considered by the Commission, where disputed, should be resolved by the preponderance of the evidence standard; that is, "such information should be relied upon only to the extent that it represents the explanation of the facts that best accords with reason and probability." *See* 28

**2.** Petitioner has filed a citation to additional authority which refers this Court to the case of *Davis v. United States,* 649 F.Supp. 754 (C.D.Ill. 1986), in which the district court held that the Parole Commission had violated the terms of a plea agreement entered into by Davis and the government. Specifically, the plea agreement prevented the government from using "any statement or testimony by the defendant, directly or indirectly, to bring additional charges against the defendant. . . ." The district court in *Davis* found that the Parole Commission, although not explicitly bound by the plea agreement, had violated the agreement by taking into consideration certain statements made by the defendant in its determination of his eligibility for parole.

Not only is the district court's decision in *Davis* in no way binding on this Court but it appears to be at odds with our holding in *Robinson, supra,* in which we differentiated between those terms of a plea agreement that went to the sentencing phase of a criminal prosecution and those that affected a defendant's eventual parole eligibility. In contrast to *Robinson,* the district court in *Davis* seems to have read into the government's explicit promise (not to use defendant's cooperation as the basis for the bringing of any new criminal charges) an implicit promise on the part of the Parole Commission not to consider facts obtained via defendant's cooperation in determining his parole eligibility. Notwithstanding *Davis,* we stand by the distinction we recognized in *Robinson* and hold that because the determination of parole eligibility is a separate phase of the criminal justice process, plea agreements that bind the prosecution with respect to the filing of additional criminal charges or sentencing recommendations do not, absent a clear intent to the contrary, constrain the broad discretion of the Parole Commission to consider all relevant facts and circumstances bearing upon an individual's eligibility for parole.

Reliance by petitioner upon *Robinson v. Hadden,* 723 F.2d 59 (10th Cir.1983), is similarly unavailing. There, as in the instant case, the district court, largely due to the defendant's inability to point to express government promises intended to bind the Parole Commission, found the plea agreement at issue not to have been violated. Petitioner's counsel also relied orally on *United States v. Cook,* 668 F.2d 317, 321 (7th Cir.1982), where we pointed out that the Government should use special care in drafting plea agreements. The agreement involved here has not in any way been shown to be defectively drafted.

**3.** Both petitioner's Pre-Hearing Parole Assessment and his Initial Hearing Summary expressly refer to the pre-sentence investigation's characterization of his involvement in the conspiracy as being "high level".

C.F.R. § 2.19(c). The Commission's conclusion regarding petitioner's level of involvement in the conspiracy appears to be reasonably supported by both Count Two and other evidence before the Commission; hence its determination cannot be characterized as an abuse of discretion.

 Petitioner next contests the Commission's holding him vicariously responsible for all the acts alleged to have been committed in furtherance of the conspiracy described in Count Two. The Commission stated that petitioner's participation in that conspiracy involved him with over 20,000 lbs. of marijuana which under the guidelines warrants an offense severity rating of Category Six. *See* 28 C.F.R. § 2.20 subchapter B(a). Petitioner claims that at most the 10 overt acts in which he was specifically implicated by Count Two of the indictment involved him, in one way or another, with only 6,100 lbs. of marijuana—an amount corresponding to an offense severity rating of Category Five. Although the exact circumstances and participants in the overt acts described in Count Two do not specifically associate petitioner with involvement with over 20,000 lbs. of marijuana, various conspirators, subsequent in time to the first overt act naming petitioner in February 1980, were involved in marijuana transactions aggregating in excess of the 20,000 lb. minimum required for a Category Six offense severity rating. Consequently, while petitioner himself is not directly linked by Count Two to transactions involving 20,000 lbs. of marijuana, the Commission found him vicariously responsible for a Category Six level of participation based upon the acts of his co-conspirators not only subsequent to his joining the conspiracy, but also subsequent to his claimed withdrawal from or abandonment of the conspiracy.[4] Such an aggregation of petitioner's direct and indirect involvement in marijuana trafficking, as detailed in Count Two, does not constitute an abuse of discretion so long as the vicarious responsibility for which petitioner is held accountable involved acts over which he could exercise some control or which he could reasonably be expected to foresee.[5] *See* 28 C.F.R. § 2.20 Chapter 13; subchapter A, n. 4. Acts for which petitioner was held vicariously responsible but which occurred *after* he allegedly became inactive in the conspiracy are acts which he should reasonably have been expected to foresee given his prior participation and therefore were fair

4. Because the only specific references to petitioner are contained in various of Count Two's overt acts, it is difficult to pinpoint exactly when petitioner's involvement with the conspiracy commenced and ended.

5. While the parameters of co-conspirator liability and vicarious liability are fairly well defined in the context of substantive criminal law, the question of when and under what circumstances the Parole Commission can hold an individual vicariously responsible for the acts of co-conspirators is considerably less well settled. It is undisputed that one who completely and in good faith withdraws from a conspiracy will not be held criminally liable for acts committed by his co-conspirators after such withdrawal. *United States v. Andrus,* 775 F.2d 825 (7th Cir. 1985). Petitioner's allegations in the instant case raise a different issue, however: not whether guilt or innocence may be premised upon vicarious liability for acts committed after his alleged withdrawal from the conspiracy but whether the Parole Commission's release date decision may be informed by consideration of such vicarious responsibility.
Other than the failure of Count Two to name petitioner specifically as a continuing participant in the overt acts comprising the conspiracy, there is nothing in the record to indicate that petitioner actually "abandoned" or "withdrew" from the conspiracy as opposed to perhaps becoming merely a passive participant in the conspiracy's endeavors. In any event, the Parole Commission's regulations require only that a co-conspirator be able reasonably to foresee the activities of his associates before he may be held vicariously accountable for such acts. Whether reasonably foreseeable acts committed after a conspirator's alleged withdrawal from a conspiracy may be imputed to a conspirator by the Parole Commission is thus the real question for decision. Given the uncertain circumstances surrounding petitioner's claimed abandonment of the conspiracy and the wide latitude given the Parole Commission in determining parole eligibility, we conclude that the continued involvement of the conspiracy in marijuana trafficking should have been foreseeable to petitioner and while criminal liability could not necessarily be assigned to him for such acts, consideration of such activities is not precluded in the context of parole eligibility.

game for the Commission to hold against *him.*[6]

**B. The facts of petitioner's involvement in the conspiracy, as limited by the plea agreement, do not support the Commission's setting a presumptive release date 20 months in excess of the guidelines established for Category Six offenders.**

The essence of this argument is that if only the facts by which petitioner claims the Parole Commission was bound under the terms of the plea agreement were considered, a release date beyond that suggested by the guidelines would not be appropriate. However, because we have already decided that the Commission was not bound to consider only the acts in Count Two specifically mentioning petitioner, this argument is meritless. Whether sufficient facts existed, separate and apart from those considered in assigning petitioner a Category Six offense severity level, to support the addition of 20 months to petitioner's release date is the question next addressed.

**C. The Parole Commission improperly "double-counted" when computing petitioner's release date.**

Petitioner was assigned a presumptive release date of 72 months on the basis of his having committed a Category Six offense (40–52 month release) and the Commission's decision to impose an additional 20 months due to aggravating circumstances. The Commission's initial Notice of Action stated that the Category Six determination was based upon two factors: (i) the aggregate amount of marijuana involved (in excess of 20,000 lbs.) and (ii) the nonperipheral role which petitioner played in the overall enterprise. Similarly, the Notice of Action explained a release date beyond the guidelines by reference to the same two factors involved in the Category Six deter-

mination plus the fact that the overall offense was unusually sophisticated in nature and was of four years' duration.

Parole Commission presumptive release guidelines are just what their name implies—they are intended merely to guide the Commission. Especially mitigating or aggravating circumstances will justify the Commission in reaching release date decisions either above or below the guidelines. *See* 28 C.F.R. § 2.20(c) and (d); *Inglese v. United States Parole Commission,* 768 F.2d 932, 936 (7th Cir.1985). Although notes to 28 C.F.R. § 2.20(c) and (d) provide examples of aggravating circumstances which do not include the sophistication or duration of the particular offense, the examples listed are expressly intended not to be exhaustive and thus may certainly include the nature and duration of the criminal conduct at issue. As this Court has previously observed, however, there is a danger that duration may be an aspect contributing to the sophistication of a criminal conspiracy, with the result that a decision beyond the guidelines which is purportedly supported by two aggravating factors is, in reality, supported by only one. *See Romano v. Baer, supra,* 805 F.2d at 271 n. 1. Nevertheless, the fact that the Commission considered the sophistication of the conspiracy as a sufficiently aggravating factor to warrant a release date beyond the guidelines is perfectly appropriate, *Romano,* 805 F.2d at 270, and because that factor was not used by the Commission in calculating petitioner's offense severity rating the Commission was not guilty of "double-counting."

**D. The Commission applied its guidelines to petitioner and a co-defendant dissimilarly.**

Petitioner here asserts that co-defendant Robertson received a presumptive release date of 60 months (compared to petitioner's

---

**6.** The Commission also seems to have considered the activities of the conspiracy prior to petitioner's involvement in determining his offense severity rating. Such consideration is probably improper for petitioner would not have been in a position to exercise control over or reasonably foresee acts committed by the conspiracy before he joined its ranks. However, because the activities of the conspiracy subsequent to petitioner's involvement dealt with in excess of 20,000 lbs. of marijuana the Commission's Category Six assessment can be sustained on that ground.

72 months) despite an almost identical level of involvement in the conspiracy and despite the fact that Robertson insisted on a jury trial in which he was eventually found guilty of four separate counts.[7] The Parole Commission explicitly addressed the disparity posed by petitioner in the Appeal Board's Notice of Action which affirmed the initial Commission release date determination. The Appeals Board stated that the disparity of 12 months between Robertson and petitioner was attributable to the length of petitioner's involvement in the conspiracy and the amount of marijuana with which each individual had been involved.

■ Our analysis of this claim is guided initially by the fact that petitioner possesses no constitutional right to a parole release date identical to that of a co-defendant. *See, e.g., Patten v. North Dakota Parole Bd.*, 783 F.2d 140, 144 (8th Cir. 1986); *Melvin v. Petrovsky*, 720 F.2d 9, 12 (8th Cir.1983). Although the Commission considered petitioner's participation in the conspiracy to have spanned four years when the overt acts specifically mentioning petitioner cover only a 22–month period (February 1980 to November 1981), the Commission did not abuse its discretion by requiring petitioner to serve 12 more months than Robertson based upon petitioner's participation in the conspiracy for 12 months more than Robertson. It was similarly not unreasonable for the Commission to have inferred that the longer duration of petitioner's involvement in the conspiracy resulted in his involvement with greater quantities of marijuana which, in turn, would also justify a release date beyond that assigned Robertson.

E. Petitioner was not afforded notice or an opportunity to contest the Commission's claim that his involvement in the conspiracy lasted four years.

■ The district court concluded that because Count Two of petitioner's indict-

ment attributed to him a four-year association with the conspiracy, petitioner was on notice that a four-year period would be considered by the Commission. Not only is the district court's ruling on this point sensible, but as has been stated above, the conspiracy's activities during the lesser period of involvement asserted by petitioner would still justify the Category Six rating and extended release date assigned by the Commission.

■ Finally, petitioner contends that the district court committed error by not convening an evidentiary hearing to address his allegations. The district court found that petitioner's habeas petition raised no outstanding factual issues and that no evidentiary hearing was therefore necessary. While the precise duration of petitioner's participation in the conspiracy remained a fact in constant contention, the Commission's disposition of petitioner's parole application can be sustained even if only the length of time that petitioner admits to have been associated with the conspiracy is considered. Thus, despite the fact that petitioner may be able to point to an erroneous factual foundation for the Commission's decision, such an inaccurate four-year factual foundation did not entitle him to relief and the district court need not have ordered an evidentiary hearing. With respect to petitioner's other claims, the facts were straightforward, leaving the only real issue before the district court the legal question of whether Commission reliance on them constituted an abuse of discretion. As seen, they did not. Under these circumstances the district court did not err in disposing of petitioner's petition without an evidentiary hearing.

### III.

Petitioner's inability to point to any evidence, save his own subjective under-

---

**7.** On appeal, petitioner raises for the first time the disparity between his own parole date and the parole dates of two additional co-defendants. We need not address these additional allegations inasmuch as petitioner failed to raise them in the district court. However, even if we were disposed to consider these other alleged disparities, petitioner would not prevail for the simple reason that he has no right to receive the same release date as those co-defendants. *See infra.*

standing, that his plea agreement was designed to bind the Parole Commission's otherwise broad discretion to consider the total range and circumstances of his offense renders meritless the assertion that the Commission's parole decision breached the terms of his plea agreement. Similarly, petitioner's allegations challenging the appropriateness of his Category Six offense severity rating and his release date beyond the Commission's guidelines are without foundation. Finally, there was no abuse of discretion on the Commission's part in setting different parole dates for petitioner and a co-defendant. Accordingly, the decision of the district court is

AFFIRMED.