**UNITED STATES of America**

v.

**Randy Scott FINK.**

**No. Crim. A. 85–321.**

United States District Court,
E.D. Louisiana.

Dec. 19, 1988.

Harold Gilbert, U.S. Atty., New Orleans, La., for petitioner.

Lee Leonard, New Orleans, La., for respondent.

## OPINION AND ORDER

BEER, District Judge.

This matter came before the court for hearing on December 14, 1988 on petitioner's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. section 2255.[1]

### I. *Statement of Facts*

Randy Fink pled guilty to two counts of a four count indictment involving marijuana importation on January 13, 1986. He had been arrested on August 25, 1985 and has been incarcerated since that date. His plea was entered subject to a plea bargain, the crucial language of which provides that the government promises not to use any testimony given after November 1, 1985 directly or indirectly against him.[2]

Petitioner wasn't sentenced until Oct. 21, 1987. He had agreed to the delay in order to demonstrate his cooperation with the government. This was the government's preference. He was sentenced *inter alia* to seven and one-half years imprisonment (90 months).

Fink's pre-sentence investigation estimated his Parole Commission Guidelines for release from confinement at 40–52 months.[3] The Probation Office included in mover's offense behavior only his prior in-

---

**1.** The provisions of 28 U.S.C. section 2255 provide in part that:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

This habeas petition was filed as Civil Action No. 88–5092, but in accordance with local procedure, is referred to by its criminal docket number.

**2.** The plea agreement stated, "[t]he Government also agrees that any statements or testimony given by the defendant pursuant to questions asked by federal agents or prosecutors as of and after the date of November 1, 1985, and as a result of this agreement will not be used against him, nor anything derived from the statements or testimony be used against him." Plea Agreement, dated January 6, 1986 at p. 2.

**3.** Mover's pre-sentence investigation found him to have a salient factor score of 8 and an offense severity of 6. Under the applicable Parole Guidelines these numbers would put him in a range of 40–52 months to be served in prison.

volvement with marijuana; however, the pre-sentence report did include information relative to cocaine involvement. Even so, this information was gathered after Fink had received immunity by government prosecutors for testifying before a Grand Jury in Miami, Florida. It is undisputed that the government had no prior knowledge of this involvement and that any and all information used by the Parole Commission related to the cocaine involvement came from Fink's debriefing as part of his plea bargain agreement with the government.

A Motion for Reduction of Sentence was timely filed in February of 1988, but, it was agreed by the petitioner and government that it would not be set for hearing until a later date when the extent of Fink's cooperation would be known. The matter was heard on November 9, 1988, and was taken under advisement by this court.

On April 12, 1988, a Notice of Action was issued by the Parole Commission. Pursuant to a hearing, the Parole Commission indicated a range of 100+ months to be served by petitioner, thereby continuing his sentence to expiration.[4] In making this determination, the Commission considered the information regarding petitioner's cocaine involvement.

On July 5, 1988 an appeal was filed with the National Appeals Board requesting that Fink's guidelines be reduced to the original estimate (40–52 months). At both the original hearing and the appeal petitioner also contended that a one year reduction should be granted because of his assistance in the prosecution of others, some of which occurred under "exceptional circumstances" pursuant to Section 2.63 et seq. including Section 2.63–01(2)(B) of the Parole Commission Regulations. The exceptional circumstances involved Fink's continuing to cooperate with and testify for the government in spite of the fact that his life had been threatened. Mr. Harold Gilbert, Jr.,

of the New Orleans Strike Force joined in requesting that the Appeals Board take this information into consideration.

The Appeals Board affirmed the original decision on August 19, 1988. Both the Parole Commission and the Appeals Board indicated that petitioner's request to lower his actual time served because of exceptional circumstances had merit. However, since Fink's guidelines had been set at 100+ months, he would be released before that time by having his incarceration continue until the expiration of his sentence. However, the Parole Commission indicated that if the original guidelines had remained in place, the request would have had a basis for serious consideration.

The instant motion is unopposed by the government. In fact, the government states its agreement with petitioner's contention that the Parole Commission's use of Fink's immunized grand jury testimony to enhance his punishment by raising his guidelines is a violation of the Fifth Amendment of the United States Constitution.

## II. *Legal Analysis*

■ Petitioner, currently in federal custody, asserts that his guilty plea was induced by a now apparently unkept plea bargain, and that his compelled testimony was used to enhance his punishment in violation of his Fifth Amendment rights pertaining to self-incrimination and due process. As stated in *United States v. McCord*, 618 F.2d 389, 392 (5th Cir.1980), "A conviction based on a guilty plea that has been induced by an unkept plea bargain is subject to collateral attack under 28 U.S.C. section 2255. *Machibroda v. United States*, 368 U.S. 487, 493–94 [82 S.Ct. 510, 513–14, 7 L.Ed.2d 473] (1962); *Bryan v. United States*, 492 F.2d 775, 778 (5th Cir. en banc 1974)." Therefore, the court properly considers petitioner's contentions at this time.[5]

---

4. The Parole Commission raised his offense severity to 8.

5. It should be noted that this is not a situation where mover is complaining that there were post-sentencing changes in the guidelines of the

Parole Commission, resulting in longer mandatory minimum terms of imprisonment for certain groups of inmates. Such change does not provide a basis for collateral attack on the sentence pursuant to 28 U.S.C. section 2255. *Unit-*

Petitioner alleges that the Parole Commission raised the guidelines applicable to him solely on the basis of immune information and that such act was unconstitutional.[6] Fink has served more than 39 months in confinement. Had his plea bargain been kept and his compelled testimony not been unconstitutionally used against him to enhance his confinement period, his guidelines indicate that he would be otherwise eligible for parole as from December 20, 1988. He asks for a reinstatement of the original parole guidelines.

Because the facts of this case are indistinguishable in any significant way from those facing the court in *Williams v. Turner*, 702 F.Supp. 1439 (W.D.Mo.1988) (hereinafter *"Williams"*), this court adopts the reasoning and conclusions of the *Williams* court.[7]

In *Williams*, the petitioner went to trial and was sentenced to 10 years imprisonment, with parole eligibility guidelines stated to be 24–36 months. The United States Department of Justice authorized the President's Commission on Organized Crime to issue an Order for Williams to give testimony. He was promised immunity. "[N]o testimony or other information compelled [by the Order], or any information directly or indirectly derived from such testimony or other information, may be used against the witness in any criminal case ..." *Williams*, at 1442. Williams was ordered to testify and his testimony was instrumen-

tal in gaining convictions. The Parole Commission considered Williams' testimony and ultimately recommended that the case be referred to the Regional Commissioner for original jurisdiction consideration.[8] The National Commission denied him parole based on information which came from his own compelled testimony. Williams appealed but the decision was affirmed by the full Parole Commission.

Williams ultimately petitioned for a writ of habeas corpus alleging that the decision of the United States Parole Commission requiring him to remain in confinement for 80 months when his guidelines called for release after service of 24–36 months violated statutory law and/or his rights under the fifth amendment to the United States Constitution.

The issues considered by the *Williams* court were: (1) Did the Parole Commission use evidence gained, directly or indirectly from compelled testimony to enhance Williams' time to be served and, if so, (2) is this permissible under the fifth amendment and/or applicable law? The court concluded that compelled evidence was used to enhance time served and that such action was unconstitutional.

In Fink's case, it is uncontested that the testimony was given in compliance with his plea bargain and immunity agreement. Testimony can be properly compelled and

ed *States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979); *United States v. Taylor*, 768 F.2d 114 (6th Cir.1985). Rather this is a situation where the Parole Commission guidelines remained the same, but this individual's guidelines were changed in violation of his Fifth Amendment and due process rights.

**6.** It is interesting to note that the sentencing commission guidelines which recently took effect (Nov. 1, 1987) specifically address this issue in Section 1 B 1.8:

Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and the government agrees that self-incriminating information so provided will not be used against the defendant, *then such information shall not be used in determining the applicable guidelines range* except to the extent provided in the agreement." (emphasis added).

**7.** Judge William Collinson, Senior Judge for the Western District of Missouri wrote the Order in *Williams*. That Order was an interim order and it has not yet been published in the federal reporter system. Subsequent to its issuance, the Parole Commission recommended release for petitioner, and petitioner's attorney did not pursue the habeas petition, as it had become moot. This history in no way affects the reasoning of the Order or the validity of its conclusions.

**8.** The original Commission had split its vote. One examiner recommended giving Williams 36 months, the maximum amount of his original 24–36 month guidelines range and the other examiner recommended that he be required to serve to the expiration of his sentence (approximately 80 months).

immunity for compelled testimony is part of our "constitutional fabric." *Ullmann v. United States*, 350 U.S. 422, 426, 76 S.Ct. 497, 500, 100 L.Ed. 511 (1956); *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). The fifth amendment must protect both interests.

The *Williams* court noted that,

[t]he fifth amendment commands that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." This protection is not limited to simply the prosecution of criminal cases. "The essence of this basic constitutional principle is 'the requirement that the State which proposes to convict *and punish* an individual produce the evidence against him by the independent labor of its officers, not by the simple, cruel expedient of forcing it from his own lips.'" *Estelle v. Smith*, 451 U.S. 454 [101 S.Ct. 1866, 68 L.Ed.2d 359] (1981) (quoting *Culombe v. Connecticut*, 367 U.S. 568, 581–582 [81 S.Ct. 1860, 1867, 6 L.Ed.2d 1037] (1961) (emphasis added by the *Estelle* Court)). Thus the Supreme Court has recognized that not only is the government prohibited from using a person's compelled testimony in an effort to convict him, it is also improper to use it when fixing his punishment.

*Williams*, at 1446. *Estelle* states:

The Fifth Amendment privilege is "as broad as the mischief against which it seeks to guard," *Counselman v. Hitchcock*, 142 U.S. 547, 562 [12 S.Ct. 195, 198, 35 L.Ed. 1110] (1892), and the privilege is fulfilled only when a criminal defendant is guaranteed the right "to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty ... for such silence." *Malloy v. Hogan*, 378 U.S. 1, 8 [84 S.Ct. 1489, 1493, 1494, 12 L.Ed.2d 653] (1964).

*Estelle*, 451 U.S. at 467–468, 101 S.Ct. at 1875–1876.

The *Williams* court considered whether the type of retribution the petitioner received—an increase in *actual* confinement time though not an increase in the *sentence* imposed—was a violation of the fifth amendment. Liberty from bodily restraint has always been recognized as the core of the liberty protected from arbitrary governmental action by the due process clause. *Williams*, at 1447 (relying on *Ingraham v. Wright*, 430 U.S. 651, 673–674, 97 S.Ct. 1401, 1413–1414, 51 L.Ed.2d 711 (1977); *Board of Regents v. Roth*, 408 U.S. 564, 572, 92 S.Ct. 2701, 2706–2707, 33 L.Ed.2d 548 (1972) and the following cases). Supreme Court decisions seem to support the conclusion that criminal offenders have a liberty interest in securing parole release, and, thus, serious and timely consideration for parole release. *See Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (all persons released on parole possess an interest in remaining free from incarceration); *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (individuals on probation retain a liberty interest which cannot be terminated without due process); *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (loss of good-time credits implicates a liberty interest even though the forfeiture only deprives the prisoner of freedom he expects to obtain sometime hence); *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 26, 99 S.Ct. 2100, 2113, 60 L.Ed.2d 668 (1979) (Marshall, J. dissenting) (same). Relying on the above cases and reasoning, the *Williams* court concluded that although the term of a sentence may not actually be lengthened, if actual term of confinement is, then any additional time spent in prison is additional punishment. It found that a penalty is suffered because "a liberty interest [is] involved with regard to a presumed parole release date and ... that that interest is protected by the fifth amendment's insurance of due process and its protection against compelled self-incrimination." *Williams*, at 1448.

This court agrees with that conclusion. By using information that Fink divulged as part of its agreement with the government, the government compromised his liberty interest. Because fifth amendment privileges are at least coextensive with a grant

of immunity, the Commission must be prohibited from utilizing compelled testimony as justification for going above its originally indicated guidelines.[9]  In Fink's case, the Parole Commission abused its discretion. This court does not have the power to simply substitute its own discretion for that of the Commission.  However, "[i]f the court has found that the Board has abused its discretion, it may remand the case to the Board with instructions for correction.  If the case was before the court on a petition for habeas corpus, it may order compliance within a reasonable period, failing which it may order the petitioner discharged from custody." *Billiteri v. United States Board of Parole*, 541 F.2d 938, 946 (2d Cir.1976); *See Broussard v. Lippman*, 643 F.2d 1131 (5th Cir.1981).

Accordingly, it is

ORDERED that the Parole Commission immediately reevaluate petitioner's parole status in a manner consistent with this opinion.  Specifically, this will be a *de novo* type of hearing with no consideration being given to information gleaned from petitioner's compelled testimony.  Should the Commission again recommend going above the guidelines, an explanation sufficiently detailed to explain the Commission's basis for doing so must be included.  Compliance as above indicated by January 31, 1989.

---

**9.** In *Davis v. United States,* 649 F.Supp. 754, (C.D.Ill.1986) when the Commission violated the terms of a plea agreement by using information concerning defendant's prior cocaine involvement, the court held that the government could not get in through the back door what it clearly could not get in through the front.  A parole release increase "would allow one arm of the Government—the Parole Commission—to increase a defendant's period of incarceration when another arm of the Government—the United States Attorney's office—could not do so through the prosecution of additional criminal charges." *Davis,* 649 F.Supp. at 759.