788 F.Supp. 700 (1992)
In re Subpoena of James HEIMERLE.
UNITED STATES
v.
John GOTTI and Frank Locascio, Defendants.
No. CR 90-1051 (S-1).
United States District Court, E.D. New York.
March 19, 1992.
*701 Andrew J. Maloney, U.S. Atty., John Gleeson, Asst. U.S. Atty., for U.S.
Albert J. Krieger, Miami, Fla., for John Gotti.
John W. Mitchell, LaRossa, Mitchell & Ross, New York City, Anthony M. Cardinale, Boston, Mass., for Frank Locascio.
Christine E. Yaris, New York City, for James Heimerle.

AMENDED MEMORANDUM AND ORDER
GLASSER, District Judge:
James Heimerle moves to quash a subpoena commanding him to appear as a witness at trial. Heimerle, who is currently on probation, argues that the grant of statutory immunity he anticipates receiving is inadequate to protect his fifth amendment rights; specifically, Heimerle fears that his immunized testimony may be used against him in a future probation revocation proceeding. In the alternative, he argues that he should not be compelled to appear when the government refuses to provide him in advance with the minutes of his grand jury testimony. In addition, Heimerle argues that even if the subpoena is allowed to stand, he should be furnished with a transcript of his prior testimony.

I. HEIMERLE'S FIFTH AMENDMENT CLAIM

A. Section 6002
Section 6002 of Title 18, under which Heimerle expects to receive immunity, reads in pertinent part:
Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify ... before ... a court or grand jury of the United States, ... and the person presiding over the proceeding communicates to the witness an order issued under this part [i.e., section 6003], the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony ... compelled under the order [or information derived therefrom] may be used against the witness in any criminal *702 case, except a prosecution for perjury....
In Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), the Supreme Court found section 6002 constitutionally consistent with the fifth amendment prohibition against self-incrimination. Specifically, the Court held that section 6002 immunity "is coextensive with the privilege and suffices to supplant it." Id. at 462, 92 S.Ct. at 1666. Indeed, the Court also stated that such immunity "leaves the witness ... in substantially the same position as if the witness had claimed the Fifth Amendment privilege."[1]Id.; accord United States v. Bell, 902 F.2d 563, 565 (7th Cir.1990); In re Grand Jury Proceedings, 860 F.2d 11, 14 (2d Cir.1988).
Heimerle attempts to deny that the holding of Kastigar controls in this case, and argues instead that the reach of the fifth amendment extends beyond the protection afforded under section 6002. At the outset, he notes correctly that while the language of the fifth amendment refers only to "criminal" cases, it has been liberally construed to protect against the compulsion of testimony that could be used against the witness in "quasi-criminal" proceedings. See, e.g., In re Gault, 387 U.S. 1, 49, 87 S.Ct. 1428, 1455, 18 L.Ed.2d 527 (1967) (juvenile delinquency proceedings); Boyd v. United States, 116 U.S. 616, 638, 6 S.Ct. 524, 536, 29 L.Ed. 746 (1886) (forfeiture proceedings).
Heimerle then asserts that only a literal reading of section 6002  which also refers only to "criminal" cases  is permissible, since (unlike the fifth amendment) section 6002 is merely a statute. Specifically, Heimerle contends that "[t]he use of the phrase `criminal case' is clear and unambiguous and, thus, the inquiry must end there, resulting in a determination that this statute cannot protect a witness against use of his testimony in a `quasi-criminal' or `hybrid' proceeding." Mem. at 17-18. As Judge Posner has remarked in a different context, however, statutory construction does not turn on such simplistic assertions:
A sheep is more like a goat than it is like an ostrich; but if a statute regulating sheep had been applied to goats, an attempted application to ostriches could not be defeated simply by pointing out that an ostrich is not a sheep. If "attorney" in the fee statute can mean something different from attorney, then maybe one of the other things "attorney's fee" can mean is the fee paid an expert witness or consultant.
Friedrich v. City of Chicago, 888 F.2d 511, 513 (7th Cir.1989).
A reading of the cases interpreting section 6002 makes clear that it applies equally to proceedings which are not technically "criminal" in nature:
Appellants have argued at some length that section 6002 is unconstitutional because, while it prohibits the use in "any criminal case" of any evidence obtained under the compulsion of an immunity grant, it does not expressly proscribe the use of compelled testimony or its fruits in proceedings to impose fines, penalties or forfeitures. That argument is without merit. The language of the statute simply repeats verbatim the language of the fifth amendment in that regard and must be read as incorporating the attendant judicial glosses on the constitutional language. Accordingly, the statute as written prohibits the use of compelled testimony and its fruits in proceedings to impose fines, penalties or forfeitures which are criminal in nature for fifth amendment purposes.
In re Korman, 449 F.2d 32, 34 n. 4 (7th Cir.1971) (per curiam), rev'd on other grounds, 406 U.S. 952, 92 S.Ct. 2055, 32 L.Ed.2d 340 (1972); see also United States v. 92 Buena Vista Ave., 937 F.2d 98, 103 n. 3 (3d Cir.1991) (assuming, without deciding, that a section 881 forfeiture is a "criminal case" within the meaning of section 6002), petition for cert. granted, ___ U.S. ___, 112 S.Ct. 1260, 117 L.Ed.2d 490 (1992); In re Daley, 549 F.2d 469, 474 & n. 4 (7th *703 Cir.1977) (noting that language of § 6002 deliberately mirrors that of fifth amendment), cert. denied, 434 U.S. 829, 98 S.Ct. 110, 54 L.Ed.2d 89 (1977).
Indeed, the Supreme Court itself has rejected movant's suggestion that 6002 applies only to "criminal" cases within the narrowest meaning of that term. In Zicarelli v. New Jersey State Commission of Investigation  decided on the same day as Kastigar  the Court analyzed a New Jersey immunity statute which barred the use of immunized testimony to expose the witness to "`criminal prosecution or penalty or to a forfeiture of his estate'". 406 U.S. 472, 475, 92 S.Ct. 1670, 1673, 32 L.Ed.2d 234 (1972). The Court expressly noted that it discerned "no difference between the degree of protection afforded by the New Jersey statute and that afforded by the federal statute [§ 6002] sustained in Kastigar." Id.
It follows necessarily that the Zicarelli Court believed that section 6002 protects against use both in purely criminal proceedings and in "quasi-criminal" proceedings such as forfeitures. Accordingly, Heimerle has shown no significant reason for doubting the Kastigar Court's holding that section 6002 and the fifth amendment are coextensive.[2]

B. The Relevance of the Fifth Amendment to Probation Proceedings, and the Proper Time for Raising the Privilege
Given that section 6002 immunity and the constitutional privilege against self-incrimination are coextensive, it is moot for purposes of the present proceeding whether Heimerle's immunized testimony may properly be considered in a subsequent probation revocation hearing. This court need not decide that question.
If, as the Supreme Court has recently suggested, parole and probation proceedings are not "criminal" cases subject to the fifth amendment limitation,[3] then Heimerle's motion to quash is entirely unsupported by governing law. If, on the other hand, immunized testimony cannot be used in such proceedings without violating Heimerle's fifth amendment rights,[4] the time for pressing his constitutional privilege is during those proceedings or on appeal thereafter. See In re Doyle, 839 F.2d 865, 867 (1st Cir.1988); In re Grand Jury Proceedings, 835 F.2d 375, 376 (1st Cir. 1987) (per curiam).
A moment's reflection reveals why Heimerle cannot raise the privilege at this juncture in order to avoid giving immunized testimony. Let us suppose that a certain potential witness W fears (with good reason or otherwise) that a prosecutor will attempt to indict him in the future on the basis of W's anticipated immunized testimony. It is clear that such a prosecutorial act would utterly violate W's rights under section 6002 and the fifth amendment; it is equally clear that even if this unlikely event were to occur,[5] W cannot on that basis refuse to testify under a grant of *704 immunity now. Were it otherwise, any witness could refuse to testify, even after receiving use immunity, on the theory that his testimony might later lead to prosecutorial violations of his right against self-incrimination.
Thus, even if Heimerle is correct in his claim that a probation revocation hearing is not "criminal" within the meaning of the fifth amendment and section 6002, the prospect of future improper use of Heimerle's immunized testimony does not permit him to refuse to testify here under a grant of immunity.
Accordingly, the motion to quash must be denied.

II. DISCLOSURE OF PRIOR GRAND JURY TESTIMONY
Heimerle should be provided with the minutes of his grand jury testimony. Contrary to his contention, this is not the only alternative to quashing the subpoena; this court may, in its discretion, decline to authorize the release of the transcript while compelling his testimony. In this case, however, the normal reasons for withholding grand jury testimony simply do not exist.
Generally, a party moving to obtain the transcript of all or part of grand jury proceedings must make a strong showing of particularized need for the material under Federal Rule of Criminal Procedure 6(e)(3)(C)(i). See United States v. Sells Eng'g, Inc., 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983); Douglas Oil Co. v. Petrol Stops N.W., 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979). As Heimerle correctly observes, this policy in favor of secrecy exists for four widely recognized reasons: 1) to prevent the accused from fleeing in advance of trial and from tampering with witnesses; 2) to prevent prejudicial disclosure of information against an unindicted target; 3) to encourage witnesses to testify freely before the grand jury without fear of embarrassment or retribution; and 4) to encourage free deliberation among the grand jurors themselves. See Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 405, 79 S.Ct. 1237, 1243, 3 L.Ed.2d 1323 (1959) (Brennan, J., dissenting); United States v. Procter & Gamble Co., 356 U.S. 677, 681-82 n. 6, 78 S.Ct. 983, 986 n. 6, 2 L.Ed.2d 1077 (1958).
Where the person seeking disclosure of specific testimony is the witness himself, rather than a third party, these considerations lack force. In the most recent case directly on point, the D.C. Circuit held that instead of bearing the burden of persuasion himself, a grand jury witness "is entitled to a transcript of his own testimony absent a clear showing by the government that other interests outweigh the witness' [sic] right to such transcript." In re Sealed Motion, 880 F.2d 1367, 1371 (D.C.Cir.1989). The court noted that the privilege of secrecy as to specific testimony belongs to the witness alone, and that he is free in any event to reveal his testimony to others outside the grand jury. Id. at 1371-72 (citing VIII J. Wigmore, Evidence § 2362). Using the same analysis, several other courts concur that a witness has a presumptive right to obtain a transcript of his own testimony. See In re Ferris, 512 F.Supp. 91, 92 (D.Nev.1981) ("the effect of the transcript on the secrecy of the grand jury is minimal"); In re Minkoff, 349 F.Supp. 154, 158 (D.R.I.1972) ("There is no merit in a paranoid secrecy for the sake of secrecy itself.").
None of this should be taken to mean that a witness is in every case entitled to his grand jury testimony as a matter of right. Rather, as the D.C. Circuit observed, release of the minutes may be denied (or at least delayed) where the government shows a sufficient countervailing interest. For example, in its recent decision in United States v. Coiro, 785 F.Supp. 326 (E.D.N.Y.1992), this court itself issued a protective order with respect to the defendant's prior grand jury testimony. Coiro, like Heimerle, has been subpoenaed to testify in United States v. Gotti. In addition, *705 Coiro is under a separate indictment for perjury in connection with his grand jury testimony. While acknowledging that Coiro is unquestionably entitled to his grand jury testimony in preparing his own defense, this court found substantial justification for withholding the transcript until Coiro completes his testimony in United States v. Gotti. Coiro is currently serving a prison term for a RICO conviction arising out of obstruction of justice predicates, and (as noted above) is now under indictment for perjury; in both cases, the transactions at issue involved matters pertaining to Gotti and his associates. In light of Coiro's demonstrated willingness to subvert the truth-seeking process, especially in connection with the subject matter of his anticipated testimony, this court identified a significant danger that Coiro would improperly tailor his testimony if given access to the grand jury transcript.
Under the In re Sealed Motion test, the government has failed to show interests sufficiently weighty to overcome Heimerle's presumptive right to a transcript. The government's single-paragraph response merely recites a conclusory interest in grand jury secrecy and a desire to avoid providing the defense with grounds for impeaching Heimerle. The first of these grounds is nonsensical, since (as Wigmore notes) the right of secrecy vis-à-vis Heimerle's testimony belongs to Heimerle himself. As for the second prong, Heimerle's memorandum explains that the government's concern is this: if Heimerle obtains and reviews the transcript, the defense may elicit the fact of that review in order to impeach him on cross-examination. As the defense notes, however, the government has at the same time expressed a willingness to refresh Heimerle's memory orally if he is willing to be interviewed by the government attorney prior to testifying. Assuming this to be true  and the government does not dispute this assertion in its response  the government has made no showing of a reason for non-disclosure, much less a showing sufficient under the D.C. Circuit test.
It is true that many cases hold that a witness must make the same showing of particularized need as any other applicant. However, these cases carry less precedential weight than the D.C. Circuit's In re Sealed Motion opinion, are generally much older and date from a period when the keeping of grand jury minutes was optional, and frequently err in their reliance on Supreme Court precedent in this area. For example, the court in In re Grand Jury Proceedings, 73 F.R.D. 647 (M.D.Fla.1977) claimed that "[t]he law is definite that a witness before a grand jury does not have a right to a transcript of his testimony." Id. at 650 (citing Pittsburgh Plate Glass, 360 U.S. at 400, 79 S.Ct. at 1241); see also Valenti v. Department of Justice, 503 F.Supp. 230, 233-34 (E.D.La.1980) (same). In fact, however, Pittsburgh Plate Glass only established that a third party (in that case, the defendant) has no presumptive right to obtain the grand jury minutes of others' testimony. Similarly, in refusing to provide a witness the minutes of his grand jury testimony on the ground that he had not demonstrated a compelling necessity, one district court made the irrational claim that "furnishing transcripts to grand jury witnesses ... would subject such witnesses to retaliation and interfere with the ability of the grand jury to obtain information." In re Alvarez, 351 F.Supp. 1089, 1091 (S.D.Cal.1972).
Accordingly, Heimerle's request for the minutes of his grand jury testimony is granted, subject to the condition that Heimerle bear any costs involved. See In re Ferris, 512 F.Supp. at 92.
SO ORDERED.
NOTES
[1] It is clear from a reading of section 6002 that the term "substantially" in the Court's language implicitly acknowledges the perjury exception. Clearly, unlike an immunized witness, a witness who claims the fifth amendment privilege (with no subsequent grant of immunity) is not subject to a perjury prosecution.
[2] It is true that a number of courts have observed that the fifth amendment privilege may extend beyond the reach of section 6002 where there is a threat of prosecution in a foreign jurisdiction (which section 6002 is naturally powerless to bar). See, e.g., In re Gilboe, 699 F.2d 71, 75 (2d Cir.1983). While Heimerle cites this fact at length in support of his claim that section 6002 provides him with inadequate assurances of privilege, the exception here does not support Heimerle's position. Unlike a foreign prosecution, any proceeding related to Heimerle's probation status will unquestionably take place under the jurisdiction of the United States, and therefore within the reach of section 6002.
[3] See Allen v. Illinois, 478 U.S. 364, 372, 106 S.Ct. 2988, 2993, 92 L.Ed.2d 296 (1986); Minnesota v. Murphy, 465 U.S. 420, 435 n. 7, 104 S.Ct. 1136, 1146 n. 7, 79 L.Ed.2d 409 (1984) (in dicta).
[4] Two district courts have recently held expressly that testimony immunized under § 6002 cannot be used in a parole/probation revocation hearing without violating the fifth amendment rights of the witness-probationer. See United States v. Fink, 703 F.Supp. 503, 504 (E.D.La. 1988); Williams v. Turner, 702 F.Supp. 1439, 1446-47 (W.D.Mo.1988).
[5] It is true that, in a different context, the likelihood of later use of one's testimony has fifth amendment significance. Specifically, a non-immunized witness may not invoke the fifth under circumstances where the testimony is of dubious prosecutorial value, or where the probability of later prosecution is itself remote. See Zicarelli, 406 U.S. at 478, 92 S.Ct. at 1675; In re Gilboe, 699 F.2d at 75. Once a witness has received immunity, however, the degree of speculativeness ceases to have relevance except insofar as the witness may fear foreign prosecution. See Gilboe, 699 F.2d at 74-75.