942 F.2d 795
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Eva Patrick VERNER, Defendant-Appellant.
 Nos. 90-50141, 90-50462.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 23, 1991.*
Decided Aug. 29, 1991.
 
 Before BROWNING, FARRIS and WILLIAM A. NORRIS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Eva Patrick Verner appeals pro se the sentence imposed following her guilty plea to a superseding information charging her in five counts with mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. Verner claims the government breached its plea agreement by urging the court to sentence her based on the losses her victims sustained and to impose restitution. She further claims the district court erred by: 1) refusing to hold a hearing on her motion to waive counsel; 2) increasing her sentence based on the government's perjurious account of her victims' losses; 3) sentencing her in violation of the Double Jeopardy Clause; and 4) imposing sentence based on an incorrect calculation of the appropriate Sentencing Guidelines range.[1] We have jurisdiction under 28 U.S.C. § 1291, and we vacate the sentence and remand for resentencing.
 
 1. Breach of Plea Agreement
 
 3
 We review for clear error a district court's construction of a plea agreement. United States v. Keller, 902 F.2d 1391, 1393 (9th Cir.1990). In deciding whether a plea agreement has been violated, the district court looks to what the defendant reasonably understood when she entered her plea of guilty. United States v. Travis, 735 F.2d 1129, 1132 (9th Cir.1984).
 
 
 4
 Verner signed an agreement in September 1989 committing her to plead guilty to five counts of mail and wire fraud. The agreement specified that each count exposed Verner to a maximum penalty of five years imprisonment, that the government was free to recommend any sentence it deemed appropriate, and that restitution could also be ordered.
 
 
 5
 When she was arraigned two months later, Verner refused to plead guilty to an information charging her, among other things, with effecting two wire transfers in the amounts of $90,002.27 and $132,000. At Verner's insistence, a superseding information was drafted, charging that she made telephone calls to advance her fraudulent schemes. Reference to the wire transfers was deleted.
 
 
 6
 At sentencing the government recommended a term of incarceration and restitution based on the sums of the wire transfers charged in the original information. Verner claims this amounted to a breach of the plea agreement. We disagree.
 
 
 7
 The plain language of the plea agreement left the government free to argue for a sentence and restitution based on the losses resulting from Verner's crimes, whether or not these losses were specified in the information. To the extent that Verner believed, based on the agreement, that these losses could not be taken into account at sentencing, her belief was unreasonable. See Travis, 735 F.2d at 1132.[2]
 
 2. Right to Self-Representation
 
 8
 28 U.S.C. § 1654 provides that "[i]n all courts of the United States the parties may plead and conduct their own cases personally ..."
 
 
 9
 Verner claims that, because she complained repeatedly about her court-appointed counsel and asked to represent herself, the district court was bound to hold a hearing to evaluate her competence to proceed pro se. Although we do not question the right of a competent person to defend herself, we fail to see how the district court impinged this right.
 
 
 10
 Between November 1989 and January 1990, Verner apparently made four requests to have her attorney, Kevin Brehm, dismissed for incompetence.[3] At the change of plea hearing, the district court acknowledged these complaints, but suggested that Verner proceed with Brehm unless she had some disagreement with him. Verner agreed, and stated later that she was satisfied with Brehm's representation and his advice. When, at sentencing, Verner asked again if she might represent herself, the district court acquiesced. Since that time, Verner has proceeded without counsel.
 
 
 11
 Under these circumstances, the district court was under no obligation to hold a hearing of the type Verner requested.
 
 3. Proof of Losses
 
 12
 We review for clear error the findings that underlie an adjustment in a defendant's base offense level. United States v. Bos, 917 F.2d 1178, 1180 (9th Cir.1990). The government must prove facts supporting an upward adjustment by a preponderance of the evidence. United States v. Wilson, 900 F.2d 1350, 1354 (9th Cir.1990).
 
 
 13
 Here, the district court increased Verner's sentence based on a finding that her victims had incurred losses of more than $200,000. Verner conceded at sentencing that, in 1986 and 1988, she had telephonically arranged sales of real property she did not own. The government offered to compile documentation showing that these negotiations resulted in wire transfers of $90,002.27 and $132,000.00, respectively, and the court sentenced Verner accordingly.[4] Although we are satisfied that Verner's sentence did not rest on perjured representations, we vacate the sentence and remand for the reasons discussed below.
 
 4. Double Jeopardy
 
 14
 Verner claims the district court violated the Double Jeopardy Clause of the Fifth Amendment by adding losses her victims sustained in 1986 (before the Sentencing Guidelines were enacted) together with losses she caused in 1988 to calculate her base offense level for the later crimes. We agree.
 
 
 15
 The district court imposed concurrent terms of imprisonment, one for the convictions stemming from Verner's 1986, pre-Guidelines, crimes (Counts I, II, and III), and the other for those based on her 1988, post-Guidelines offenses (Counts IV and V). Although under pre-Guidelines law, the district court was free to impose a maximum term of five years imprisonment on each of Counts I, II and III, and the government's documentation indicates that Counts IV and V alone resulted in losses in excess of $220,000, the district court based its calculation of Verner's base offense level for the latter two counts explicitly on both pre- and post-Guidelines conduct. Thus, Verner was sentenced twice for her 1986 offense. Accordingly, we vacate the sentence and remand for proceedings consistent with this holding.
 
 5. Incorrect Guidelines Calculation
 
 16
 Section 2F1.1 of the Sentencing Guidelines establishes nineteen possible adjustments to a defendant's base offense level depending on the amount of money she procured through fraud or deceit. Verner argues, and the government concedes, that the district court impermissibly relied on a stricter version of the Guidelines that went into effect the year after she committed her crimes to adjust her base offense level. See United States v. Sweeten, 933 F.2d 765, 772 (9th Cir.1991) (per curiam). The district court determined that the loss Verner caused exceeded $200,000 and increased her base offense level by eight. The applicable version of § 2F1.1 mandates an increase of seven. Accordingly, we vacate the sentence and remand for proceedings consistent with this holding.[5]
 
 
 17
 VACATED AND REMANDED. Mandate to issue FORTHWITH.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 To the extent that Verner's ineffective assistance claim calls into question the validity of her plea agreement, we construe it as an appeal from conviction. Subject to a narrow exception, we review claims of ineffective assistance only in habeas corpus proceedings, see United States v. Laughlin, 933 F.2d 786, 788 (9th Cir.1991). Because this case does not fall within that exception, we decline to consider vacating Verner's conviction
 
 
 [2]
 This discussion also disposes of Verner's claim that the district court erred by imposing sentence based on conduct charged in a dismissed information. Although the information to which Verner pleaded guilty charged her only with making telephone calls to arrange the fraudulent sales, see Government's Excerpts of Record (GER) at 55, and superseded another which specified sums of money she had fraudulently transferred, see id. at 3, the district court, at sentencing, was free to consider the sums whose transfer Verner arranged by making the calls
 
 
 [3]
 We note that Verner entered into her plea agreement months before Brehm was appointed
 
 
 [4]
 Verner claims the government willfully withheld exculpatory evidence by failing to produce its proof until after she was sentenced. (She characterizes as "exculpatory" an FBI report in which a real estate agent, who had met Verner briefly four years before the FBI interviewed him, described her as five feet, six inches tall and weighing 140 pounds. Verner claims to be six feet tall, and to have weighed 180 pounds at the relevant time.) Nonetheless, this documentation, which is included in Verner's compilation of "Exhibits," appears amply to support the government's claim. One affidavit, from a Los Angeles title insurance company, states that Verner's second fraudulent sale alone cost the institution more than $237,000.00. See Appellant's Exhibit J
 
 
 [5]
 Verner's petition for rehearing of our August 1, 1991 order denying her petition for writ of mandamus is denied. This remand may render moot the question whether Verner is entitled to credit for time served beginning September 18, 1989 raised in the mandamus petition. Verner's motion for bail pending appeal is dismissed as moot