**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Karl KELLER, Defendant–Appellant.**

No. 88–4267.

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 5, 1990 *.

Decided May 2, 1990.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Karl J. Keller, Steilacoom, Wash., pro se.

Stephen C. Schroeder, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Before KOELSCH, CHOY and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

Karl Keller, a federal prisoner, appeals pro se the district court's denial of his motion under 28 U.S.C. § 2255 challenging his sentence and his plea. Keller contends that in setting his parole date, the government breached the plea agreement; that the presentence report contained erroneous information; and that his plea is invalid because he received ineffective assistance of counsel. We affirm.

I

Keller confessed to participation in seven armed bank robberies and one attempted robbery. Keller's attorney, Foster, negotiated an agreement whereby Keller would plea guilty to one count of armed bank robbery and the government would not charge Keller on the other counts. Foster told Keller that he would serve 24–36 months in prison for the one robbery, based on a severity score of 5, but would face 52–80 months, a severity score of 7, for all the counts. Keller was given half a day to consider the agreement and accepted it.

The plea agreement provided, in pertinent part:

> The United States expressly reserves the right to speak to the court at the time of sentencing [and] reserves ... the right to provide to the court *and* to the United States Probation Office a statement of facts relating to *all* of the criminal conduct for which [Keller] was responsible.

Plea Agreement at 3–4 (emphasis added). When he entered his plea of guilty, Keller acknowledged to the district court that he understood the terms of this agreement.[1]

At sentencing, Keller's new attorney, Hilliard, recommended a sentence consistent with Keller's expectations: 8 years (96 months), of which one third would actually be served (32 months). The government recommended 15 years; the district court sentenced him to 12 years, still within Keller's expectations.[2] The presentence report showed his severity score as the predicted "5," though it erroneously stated Keller's salient factor score as "7" instead of "10." Keller says he objected to Hilliard about the salient factor score, but Hilliard did not object to the court. Nor did Keller object when he was asked for his comments directly by the court. The government, meanwhile, made no objection to the severity rating. Keller says he believed that the severity score of 5, and the corresponding predicted prison term of 24–36 months, was thereby incorporated into the plea agreement.

In fact, when his case was evaluated for parole, the Parole Commission considered all the robberies anyway and raised his severity score to "7," setting his time in prison at 52–80 months, the range he thought he was avoiding. Keller then learned that his rating of "5" was not a term of the plea agreement, although he believed it would be.

Keller filed this motion to challenge the parole determination and the validity of his plea. The Parole Commission meanwhile corrected the erroneous salient factor

---

1. At the time he entered his plea, Keller was asked by Judge Coughenour specifically if he understood that he could be sentenced up to 25 years. Keller stated that he did.

2. Keller received a concurrent state sentence under a separate plea agreement of six years, or 72 months, to be actually served in prison.

score. The district court denied Keller's motion. We review the district court's denial of a § 2255 motion de novo. *United States v. Grewal*, 825 F.2d 220, 222 (9th Cir.1987).

## II

Keller first contends that the government violated the plea agreement when the Parole Commission used the dismissed charges in calculating his severity score and his parole. We disagree.

Plea agreements are contractual in nature and are measured by contract law standards. *United States v. Read*, 778 F.2d 1437, 1441 (9th Cir.1985), *cert. denied*, 479 U.S. 835, 107 S.Ct. 131, 93 L.Ed.2d 75 (1986). To determine whether a plea agreement is violated, the court must look to what the parties "reasonably understood to be the terms of the agreement." *Id.* This "is a question of fact to be resolved by the district court" which we review under the clearly erroneous standard. *United States v. Krasn*, 614 F.2d 1229, 1233 (9th Cir. 1980).

█ Here, the district court concluded that by its terms, the plea agreement provided that Keller would plead guilty to one count of armed robbery and the government would not *bring additional charges* against him based on the other robberies. The agreement expressly reserved the government's right to inform the court *and* the probation office about *all* of Keller's criminal activity. Keller admits he knew these provisions were in the agreement.

Keller nevertheless contends that the Parole Commission should not have *used* the other robberies in calculating his actual time served before parole. Keller concedes that "the plea agreement does not state in exact language ... their promise not to use the charges in any fashion," but argues that "the statements used would certainly lead any rational thinking person to believe they were barred from use outside of the sentencing procedure." He says the government attorneys should have included "instructions" to the Parole Commission to this effect in the plea agreement.

In support, Keller cites *Davis v. United States*, 649 F.Supp. 754 (C.D.Ill.1986). In that case, Davis had pleaded guilty to two criminal counts and agreed to cooperate fully in return for the government's promise that it would not "use any statement or testimony by the defendant ... to bring additional criminal charges" against him. *Id.* at 755 (emphasis omitted). Despite the agreement, the Parole Commission considered information Davis disclosed while cooperating. The court found this violated the agreement because "[t]he circumstances of the agreement clearly contemplate that the fruits of Davis' cooperation would not be used against him by the Government, be it the Parole Commission or the United States Attorney." *Id.* at 759.

By contrast, Keller confessed to his involvement in the bank robberies before entering into the plea agreement. He knew all the information was to be used in calculating his sentence and concedes he knew the probation office would be fully informed. The district court concluded that the agreement "only precluded the government from bringing additional criminal charges against petitioner" and the plea agreement was not violated. *Read*, 778 F.2d at 1441. This conclusion was not clearly erroneous. We affirm.

## III

Keller next contends that the salient factor score in the presentence investigation report was inaccurate. The Parole Commission corrected the error at its initial hearing but Keller contends that the inaccuracy may have resulted in a higher recommendation to the sentencing court.

█ At the time of sentencing, Keller's attorney stated to the court that the report was "factually accurate and we have no challenge to its content." Keller did not object when the court asked him directly for his comments. Keller did not otherwise raise the issue prior to filing his § 2255 motion. The district court concluded that Keller had therefore waived his right to attack the presentence report through a § 2255 motion. We agree. *See United States v. Donn*, 661 F.2d 820, 824 (9th

Cir.1981) (petitioner must raise the issue either contemporaneously or on direct appeal).

## IV

Keller argues next that his plea is invalid because he received ineffective assistance of counsel. A claim of ineffective assistance may be used to attack the voluntariness and hence the validity of a guilty plea. *Torrey v. Estelle*, 842 F.2d 234, 237 (9th Cir.1988). To establish such a claim, the petitioner must show counsel's advice was defective and prejudicial. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). To show prejudice, the petitioner must allege that absent the erroneous advice, he would have insisted on going to trial. *Id.* at 60, 106 S.Ct. at 371.

■ A. Keller first argues that Foster "assured" him that if he pleaded guilty he would spend no more than 36 months in prison. If Foster gave Keller such advice, it would have been inaccurate. However, inaccurate advice regarding parole does not necessarily constitute ineffective assistance, invalidating a plea. The Supreme Court has recognized no constitutional requirement that the state supply a defendant with information regarding parole eligibility before a plea can be voluntary. *Hill*, 474 U.S. at 56, 106 S.Ct. at 369; *see id.* at 54–56, 106 S.Ct. at 368–69 (attorney told petitioner he would be eligible for parole after serving one third of his sentence but he was required to serve one half); *Anderson v. United States*, 338 F.2d 618, 619 (9th Cir.1964) (attorney promised suspended sentence but petitioner given 3 years in jail); *cf. Blair v. McCarthy*, 896 F.2d 436 (9th Cir.1989) (failure to inform petitioner of mandatory parole term that *follows* sentence invalidates plea). Similarly, erroneous predictions regarding a sentence are deficient only if they constitute "gross mischaracterization of the likely outcome" of a plea bargain "combined with ... erroneous advice on the probable effects of going to trial." *Iaea v. Sunn*, 800 F.2d 861, 864–65 (9th Cir.1986); *see also Calabrese v. United States*, 507 F.2d 259, 260 (1st Cir.1974) ("the imposition of a sentence greater than that expected by a defendant, or *predicted* by his counsel is not adequate grounds for vacating the sentence.") (emphasis added). Only "[w]hen a plea rests in any significant degree on a promise or agreement by a *prosecutor,* so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971) (emphasis added).

Keller concedes that he "fully understands that no promise was made in reference to sentencing," does not contend that there was any erroneous prediction regarding his sentence itself, and does not contend that the government promised him his expected parole. We are highly deferential and "indulge a 'strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.'" *United States v. Freeney,* 841 F.2d 1000, 1002 (9th Cir.1988). We conclude that Foster's erroneous prediction regarding parole was not sufficiently deficient to make his plea invalid.

Even if Foster's parole prediction were deficient, Keller must allege facts that show prejudice by showing that absent the erroneous advice he would have insisted on going to trial. *Hill,* 474 U.S. at 60, 106 S.Ct. at 371; *see, e.g., Iaea,* 800 F.2d at 861 (record "replete with evidence that Iaea was very reluctant to plead guilty and that defense counsel and Iaea's brother had a great deal of trouble convincing him to do so"). Here, Keller says he had little time to consider the agreement and Foster told him he would get "the assurance of 24–36 months versus the possibilities of 52–80 months if convicted after trial." These contentions do not show that Keller would otherwise have insisted on going to trial. Keller had contacted the FBI on his own and told them he would turn himself in, before he ever contacted an attorney. He never denied his acts or suggested pleading not guilty. After Foster had negotiated his plea, he asked only "if she felt the plea bargain was their best offer." Moreover, he says he entered his plea because it was "the only alternative to a long jury trial";

he faced "possible conviction of more serious charges"; *and* he faced "a longer prison sentence." Keller does not suggest that a different parole calculation would have changed his analysis of all these factors. We conclude that Keller has not alleged facts sufficient to show prejudice.

B. Keller next argues that Foster provided ineffective assistance because she failed to advise him regarding a defense of duress. On a claim of ineffective assistance based on failure to advise a defendant of a potential defense, "resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill*, 474 U.S. at 59, 106 S.Ct. at 371.

The defense of duress requires that a defendant show that (1) the threat was one of immediate death or serious injury; (2) the threat induced a well founded fear that it would be carried out; (3) there was no reasonable opportunity to escape the threatened harm; and (4) the defendant surrendered to the proper authorities promptly after attaining a position of safety. *United States v. Shapiro*, 669 F.2d 593, 596–97 (9th Cir.1982); *United States v. Peltier*, 693 F.2d 96, 98 (9th Cir.1982) (per curiam); *see also United States v. Morlan*, 756 F.2d 1442, 1447 (9th Cir.), *cert. denied*, 474 U.S. 837, 106 S.Ct. 115, 88 L.Ed.2d 94 (1985) (riding in car with violent accomplice for six hours prior to robbery defeats defense of duress).

Although Keller may have believed his codefendant's threats, the seven bank robberies took place over a twenty-one month period. Keller cannot show that he had no reasonable opportunity to escape the threatened harm, *Shapiro*, 669 F.2d at 597, or that he surrendered promptly to the proper authorities upon attaining safety. *Peltier*, 693 F.2d at 98. We conclude that Keller has failed to allege facts that show a likelihood that this defense would have succeeded at trial.

C. Keller raises additional allegations of ineffective assistance by his first attorney in this matter, Robson, and Hilliard. These allegations were not raised in Keller's § 2255 motion to the district court and may not be raised for the first time here. *Egger v. United States*, 509 F.2d 745, 749 (9th Cir.), *cert. denied*, 423 U.S. 842, 96 S.Ct. 74, 46 L.Ed.2d 61 (1975).

V

Finally, Keller argues that he is entitled to an evidentiary hearing. To warrant an evidentiary hearing, a petitioner must "make specific factual allegations which, if true, would entitle him to relief." *Baumann v. United States*, 692 F.2d 565, 571 (9th Cir.1982). We agree with the district court that Keller's allegations do not entitle him to a hearing. *See United States v. Quan*, 789 F.2d 711, 715 (9th Cir.), *cert. dismissed*, 478 U.S. 1033, 107 S.Ct. 16, 92 L.Ed.2d 770 (1986).

VI

The district court's order denying Keller's motion under 28 U.S.C. § 2255 is

AFFIRMED.