**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Anthony Dwayne ANDERSON,
Defendant–Appellant.**

**No. 91–50113.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 8, 1992.

Decided July 13, 1992.

Abby Besser Klein, Los Angeles, Cal., for defendant-appellant.

John S. Gordon, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before: POOLE, WIGGINS and LEAVY, Circuit Judges.

POOLE, Circuit Judge:

Appellant Anthony Dwayne Anderson appeals the district court's denial of his "Motion to Enforce Plea Agreement and to Correct an Illegal Sentence." Anderson pled guilty to two counts of possession of cocaine with intent to distribute and one count of money laundering and was sentenced to concurrent ten-year terms in prison and a six-year term of supervised release. Anderson asserts that the six-year term of supervised release imposed by the district court was an illegal sentence and that the government breached his plea agreement. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm the imposition of a term of supervised release. We reverse, however, the district court's denial of Anderson's motion to enforce his plea agreement and remand to the district court with instructions to fashion an appropriate remedy if it determines that the government breached its plea agreement.

I

On July 26, 1987, Anderson and twenty-six co-defendants were indicted on one count of conspiracy to manufacture and

distribute a controlled narcotic substance, 21 U.S.C. § 846, and twenty-three counts of manufacturing, distributing, and possessing with intent to distribute cocaine, 21 U.S.C. § 841(a)(1). Anderson later agreed to plead guilty to a superseding information charging him with two counts of violating 21 U.S.C. § 841(a)(1) and one count of money laundering, 18 U.S.C. § 1957.

The plea agreement provided as follows:
1. *Counts:* Mr. Anderson has agreed to enter pleas of guilty to three counts of a superseding information as follows:

(a) Two counts charging 21 U.S.C. § 841(a)(1) [possession of cocaine with intent to distribute]. Although I have not seen that charge yet, I understand that these two counts will allege a quantity of cocaine (less than 5 kilos) sometime during the period April 1 through June 30, 1987.

(b) One count of 18 U.S.C. § 1957 [money laundering]. This count will involve merely a quantity of money in exchange for a quantity of cocaine (again, less than 5 kilos).

The plea agreement specified that Anderson could be sentenced pursuant to 18 U.S.C. § 4205(b)(2).[1] However, while defense counsel could seek a sentence pursuant to 18 U.S.C. § 4205(b)(2), the agreement stated that he "underst[ood] that [the prosecutor] may not be in agreement with that, and that [the prosecutor] w[ould] be free to argue otherwise at the time of sentencing should [he] decide to do so in [his] judgment." The agreement also stated that "[i]t is my understanding that these counts will be structured so that there is no minimum mandatory and all will be paroleable [sic]." Anderson also agreed to forfeit certain property to the government. In return, the government agreed to recommend that Anderson be sentenced to no more than ten years in prison, to return certain items seized from Anderson, to dismiss the underlying indictment, and to refrain from compelling Anderson to testify in the trials of his co-defendants.

The district court accepted the plea agreement and ordered the preparation of a presentence report (PSR). The Probation Office subsequently issued a PSR indicating that Anderson had been involved in a scheme involving the distribution of more than eighteen kilograms of cocaine. Upon Anderson's motion to strike this information, the district court ordered the PSR amended and directed that the changes be made before the PSR was transmitted to the United States Bureau of Prisons or the United States Parole Commission.

The court sentenced Anderson to three concurrent ten-year terms in prison. In addition, the court imposed a six-year term of supervised release. After sentencing and before any changes in the PSR were made, however, the Parole Commission received a copy of the uncorrected PSR from the Probation Office. The Probation Office later sent a second, amended version to the Parole Commission. After receiving these conflicting documents, the Parole Commission asked the Assistant United States Attorney (AUSA) prosecuting this case to explain the discrepancy between the amount of drugs alleged to have been involved in Anderson's scheme. The AUSA responded that Anderson had been involved in a ring that had distributed over eighteen kilograms of cocaine. The AUSA also indicated that the government would oppose parole for Anderson.

Anderson then filed a "Motion to Enforce the Plea Agreement and to Correct an Illegal Sentence." He argued that the supervised release period was longer than authorized and that the government breached the plea agreement by failing to ensure that the Parole Commission did not receive a copy of the unamended PSR and by responding to the Parole Commission's subsequent inquiry.[2] The court denied this

---

1. 18 U.S.C. § 4205(b) was repealed by the Sentencing Reform Act of 1984, Pub.L. No. 98–473, Title II, § 218(a)(5), 98 Stat. 2027 (1984). However, it applies to offenses that occurred before the effective date of repeal. *See Marshall v. Lansing,* 839 F.2d 933, 941 n. 11 (3d Cir.1988).

2. Anderson also argued that the government's failure to return $15,000 seized by the DEA was a breach. The court granted the motion with respect to this claim and ordered that money returned to the defendant.

motion, and subsequently denied Anderson's motion to reconsider.

## II

■ Anderson argues that the district court erred in setting the duration of his period of supervised release by relying upon the Anti–Drug Abuse Act of 1986, 21 U.S.C. § 841(b)(1)(C) (ADAA). He asserts that the district court should have turned to § 5D3.2(a) of the United States Sentencing Guidelines,[3] which establishes a maximum five year supervised release period, because Congress enacted the ADAA with reference to the supervised release provisions of the Sentencing Reform Act of 1984, Pub.L. No. 98–473, Tit. II, ch. II, 98 Stat. 1987, *codified at* 18 U.S.C. §§ 3583, 3601. *See Gozlon–Peretz v. United States,* — U.S. —, 111 S.Ct. 840, 848–49, 112 L.Ed.2d 919 (1991). Anderson's argument is meritless.

The ADAA requires imposition of "a term of supervised release of at least 3 years" on a defendant convicted of possession with intent to distribute cocaine. The statute contains no maximum term of supervised release. In *Gozlon–Peretz,* the Supreme Court held that the ADAA authorizes supervised release for narcotics offenses occurring before the effective date of the Sentencing Guidelines, which was November 1, 1987. The Court rejected an argument that the ADAA's supervised release provisions could not have been effective until the effective date of the Sentencing Guidelines because the statute contained no definition of "supervised release." The Court explained that such a definition was not necessary because Congress had already provided it in the Sentencing Reform Act. *Id.,* 111 S.Ct. at 848.

Accordingly, the ADAA's supervised release provision became effective on the date the ADAA was enacted, October 27, 1986, and applies to offenses committed between that date and the effective date of the Sentencing Guidelines. *United States v. Clay,* 925 F.2d 299, 302 (9th Cir.1991); *United States v. Torres,* 880 F.2d 113, 115 (9th Cir.1989), *cert. denied,* 493 U.S. 1060, 110 S.Ct. 873, 107 L.Ed.2d 956 (1990). Anderson's offenses occurred between the effective date of the ADAA and November 1, 1987. The ADAA–mandated time periods for supervised release therefore apply to him.

## III

■ Anderson asserts that the government breached its plea agreement with him. He argues that (1) the Probation Office's failure to amend the PSR in accordance with the district judge's order before transmitting it to the Parole Commission created an inconsistency with the plea agreement's specific factual stipulation as to the amount of cocaine involved; and (2) the plea agreement forbade the government from attempting to block his parole by disclosing the particular amount of cocaine involved in Anderson's distribution scheme and required the PSR and other documents submitted to the Parole Commission to reflect the stipulated quantity of cocaine. The government, on the other hand, argues that the plea agreement obligated it only to allow Anderson to plead guilty to charges for which he would be eligible for parole.[4] The government therefore does not view the plea agreement as preventing it from attempting to persuade the Parole Commission not to grant parole.[5]

---

3. U.S.S.G. § 5D3.2 has been renumbered 5D1.2 in the current version of the Sentencing Guidelines.

4. We do not agree that Anderson conceded that disclosure of the specific quantity of cocaine was permitted by the plea agreement. During the hearing on Anderson's motion to enforce the plea agreement, defense counsel walked a fine line on the question of whether this behavior would constitute a breach, but he never indicated that he believed the plea agreement toler-

ated disclosure of the *specific quantity* of cocaine involved in the distribution scheme. Counsel indicated only that he would have no objection if the government informed the Parole Commission that the plea agreement did not reflect the actual amount of cocaine involved.

5. We reject the government's assertion that the Parole Commission was not a party to the plea agreement. *See United States v. Keller,* 902 F.2d 1391, 1393 (9th Cir.1990) (recognizing that Parole Commission is bound by promises of Unit-

## A

The district court appeared to believe that Anderson could not be provided any remedy for the government's conduct even if it did constitute a breach. Thus, it issued no specific factual finding as to the meaning of the plea agreement. Accordingly, we do not decide whether Anderson's interpretation of the plea agreement is persuasive.

■ A plea agreement is a contract. *United States v. Keller*, 902 F.2d 1391, 1393 (9th Cir.1990). We believe that this plea agreement suffers from a common contract problem: ambiguity. *See L.K. Comstock & Co. v. United Engineers & Constructors, Inc.*, 880 F.2d 219, 221 (9th Cir.1989) (determination whether contract language is ambiguous subject to de novo review). Anderson apparently entered his guilty plea in the hopes of securing early parole. The language of the agreement does not clearly support Anderson's interpretation of the agreement. It states merely that the charges would be structured in a manner that would ensure Anderson's eligibility for parole. However, we cannot reject Anderson's argument solely on the grounds that it may be unsupported by the plea agreement's explicit language. *See United States v. Herrera*, 928 F.2d 769, 771–72 (6th Cir.1991); *cf. United States v. Clark*, 781 F.2d 730, 732 (9th Cir.1986).

■ While the language is not clearly supportive of Anderson's interpretation, it is not necessarily inconsistent with it ei-

ther. Read in its entirety, the agreement contains two critical stipulations that bear on Anderson's chances for parole: the allegation that he was involved in the distribution of a specific quantity of cocaine and the provision stating that "all [counts] w[ould] be paroleable [sic]." It is true that this language could mean *only* that the government was obligated to recommend a sentence under 18 U.S.C. § 4205(b)(2). However, Anderson's view that the government undertook a greater obligations is not illogical. Adherence to the quantity stipulation would facilitate his parole. Without knowing the specific quantity of cocaine involved, the Parole Commission would be unable to assign a "severity rating" which is partially based on the amount of drugs distributed by the defendant.[6] General information that Anderson had in fact been involved in the distribution of "more" or even "much more" than five kilograms would not prove particularly helpful in establishing Anderson's severity rating. Consequently, it would be unlikely to put at risk what was clearly the central advantage of the plea bargain from defendant's standpoint: the possibility of early parole.

■ Disclosure to the Parole Commission of the general extent of a defendant's involvement in drug trafficking would have been permissible. *See United States v. Nelson*, 837 F.2d 1519, 1522 (11th Cir.) (Parole Commission could consider the information provided by the government even if that information was improperly included in the PSR), *cert. denied*, 488 U.S. 829, 109

---

ed States Attorney); *United States v. Jureidini*, 846 F.2d 964, 966 n.* (4th Cir.1988) ("Both the United States Attorney and the Parole Commission are agents of the Government and are therefore bound by what are, in effect, *Government* promises.") (quoting *Davis v. United States*, 649 F.Supp. 754, 759 (C.D.Ill.1986)) (emphasis in original). *United States v. Quan*, 789 F.2d 711 (9th Cir.), *cert. dismissed*, 478 U.S. 1033, 107 S.Ct. 16, 92 L.Ed.2d 770 (1986), is inapposite. There we noted only that the *district judge* was not a party to the plea agreement.

6. Determinations of parole eligibility and the decision to grant a prisoner parole are left to the discretion of the Parole Commission. 18 U.S.C. § 4205(b)(2). In making these decisions,

the Parole Commission must determine two factors: the inmate's "salient factor" score, which measures the likelihood that he will violate his parole, and the "severity rating," which rates the crime for which the prisoner was convicted on a scale of 1 (low severity) to 8 (high severity). *See Walker v. United States*, 816 F.2d 1313, 1315 (9th Cir.1987) (per curiam); 28 C.F.R. § 2.20. The amount of drugs involved in the distribution conspiracy is important because it would affect Anderson's "severity rating." 28 C.F.R. § 2.20 ch. 9, 901(a); *see Roberts v. Corrothers*, 812 F.2d 1173, 1178 (9th Cir.1987). A prisoner who was involved in the distribution of between one and five kilograms of cocaine is assigned a severity rating of category six. 28 C.F.R. § 2.20 ch. 9, 901(a).

S.Ct. 82, 102 L.Ed.2d 58 (1988); *Levesque v. Brennan,* 864 F.2d 515, 518 (7th Cir.1988) (same); *Ochoa v. United States,* 819 F.2d 366, 372 (2d Cir.1987) (same); *Sheppard v. U.S. Parole Comm'n,* 738 F.Supp. 888, 890 (M.D. Pa.1990) (same).

Here, however, the government did more than simply make a general promise not to press for a particular sentence, which would have allowed it to include in the PSR an accurate portrayal of the defendant's actual criminal activity. *See, e.g., United States v. Stemm,* 847 F.2d 636, 639 (10th Cir.1988); *United States v. Michaelson,* 552 F.2d 472, 475 (2d Cir.1977). The government agreed to a stipulation as to the maximum quantity of drugs distributed by Anderson. Under these circumstances the general principle does not apply. *See Berganzo–Romero v. United States,* 732 F.Supp. 275, 277 (D.P.R.1990).[7] Nor does the government's present inability to fulfill its promise mean that it did not breach the plea agreement. *See United States v. Cook,* 668 F.2d 317, 320 (7th Cir.1982) ("A plea induced by an unfulfillable promise is no less subject to challenge than one induced by a valid promise which the Government simply fails to fulfill.") (citing *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970)).

### B

■ Our holding that this plea agreement is ambiguous does not automatically render Anderson's interpretation of it correct. We leave it to the district court to decide what obligations the agreement imposed upon the government. *See McKenzie v. Risley,* 801 F.2d 1519, 1526 (1986) (what the parties agreed to in a plea agreement is a question of fact to be decided by the district court), *vacated in part,* 842 F.2d 1525 (9th Cir.), *cert. denied,* 488 U.S. 901, 109 S.Ct. 250, 102 L.Ed.2d 239 (1988). The district court should resolve the issue by objective standards. *United States v. Travis,* 735 F.2d 1129, 1132 (9th Cir.1984). However, the government is to be held to the literal terms of the agreement, *United States v. Read,* 778 F.2d 1437, 1441 (9th Cir.1985), *cert. denied,* 479 U.S. 835, 107 S.Ct. 131, 93 L.Ed.2d 75 (1986), and ordinarily must bear responsibility for any lack of clarity. *United States v. Herrera,* 928 F.2d at 772; *United States v. Giorgi,* 840 F.2d 1022, 1026 (1st Cir.1988). To determine whether a violation occurred, the district court should consider what Anderson reasonably understood when he pled guilty. *See United States v. Packwood,* 848 F.2d 1009, 1011 (9th Cir.1988); *see also United States v. Arnett,* 628 F.2d 1162, 1164 (9th Cir.1979) ("The dispositive question ... is what the parties to this plea bargain reasonably understood to be the terms of the agreement.").

### C

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). Cases from several of our sister circuits would support a finding of breach under the *Santobello* rule if the district court concludes that Anderson's proffered interpretation of the plea agreement is correct. *See United States v. Jureidini,* 846 F.2d 964, 965–66 (4th Cir.1988) (government sent PSR with specific facts contradicting plea agreement stipulation to Parole Commission); *United States v. Nelson, supra* (government promised not to deviate from statement of stipulated facts setting forth quantities of drugs each defendant distributed and PSR's specifically detailed the actual amount of narcotics involved); *United States v. LeBlanc,* 762 F.2d 502, 505–06 (6th Cir.) (government promised to inform Parole Commission that defendant did not play "managerial role" in drug conspiracy; PSR included facts underlying counts of the indictment dropped as part of the plea agreement and characterized defendant as "initiator" and "finan-

---

7. *United States v. Quan, supra,* is not different. Anderson is not objecting only to the routine

distribution of the PSR.

cier" of drug distribution organization); *cert. denied,* 474 U.S. 854, 106 S.Ct. 156, 88 L.Ed.2d 129 (1985); *Cohen v. United States,* 593 F.2d 766, 769 (6th Cir.1979) (government promised not to offer recommendation as to defendant's eligibility for parole; government wrote letters to Parole Commission declining to take position on defendant's parole but implying that government would oppose it if not bound by plea agreement to remain silent). *See also United States v. Kemper,* 908 F.2d 33 (6th Cir.1990); *United States v. Foster,* 889 F.2d 1049, 1055 (11th Cir.1989); *United States v. Tobon–Hernandez,* 845 F.2d 277 (11th Cir.1988).

## IV

■■■■ If the district court finds that the government breached the plea agreement, Anderson will be entitled to appropriate relief. The district court's belief that it could not provide Anderson a remedy even if the government's conduct did constitute a breach was understandable but incorrect.

It is for the district court to decide what remedy is appropriate, including in its discretion whether to grant Anderson the option of withdrawing his plea and repleading or proceeding to trial.[8]

## V

■■■ The government has an ethical duty of candor to the Parole Commission, just as it does to the court. The government is also ethically bound to avoid entering into plea agreements that it cannot keep. In this case, the government may have placed itself between the rock of disclosure to the Parole Commission and the hard place of honesty in its dealings with the defendant.

We are disappointed that the government may have entered a plea agreement that would render compliance with both of these ethical obligations difficult, and we trust that in the future the government will strive to avoid the dilemma posed in this case. As explained by the *Jureidini* court:

This frustration of the bargain is due in large measure to the highly improvident nature of the plea agreement itself. The agreement seemingly contemplates either limiting the information made available to the parole board or dictating the action to be taken by the parole board in a particular case. Either course frustrates the Parole Commission's duty to determine when release is appropriate for a particular defendant. As a result, when the Parole Commission reached a decision contrary to that anticipated by the plea agreement, the purpose of the plea agreement was never fulfilled.... We emphasize that this plea bargain was exceedingly ill-advised.

846 F.2d at 965–66 (citations omitted). These words are not hollow.

The order denying Anderson's motion to enforce his plea agreement is REVERSED and the case REMANDED to the district court for further consideration consistent with this opinion.

---

**8.** Specific performance may be ordered in cases where the government has breached a plea agreement. *United States v. Partida–Parra,* 859 F.2d 629, 635 n. 7 (9th Cir.1988). While the Parole Commission generally has the right to be told the specific facts surrounding a defendant's crime, we do not believe that this principle would necessarily prevent specific performance in all cases where the government violates a promise to adhere to a specific factual stipulation in a plea agreement. The government must expressly reserve its right to disclose the "truth" about a defendant's activities to the Parole Commission. *Keller,* 902 F.2d at 1393; *Robinson v. Hadden,* 723 F.2d 59, 63 (10th Cir.1983) (refusing to bar Parole Commission consideration of uncharged offenses "unless such consideration would violate a plea agreement or a representation made by the Government"), *cert. denied,* 466 U.S. 906, 104 S.Ct. 1684, 80 L.Ed.2d 159 (1984); *Keller v. U.S. Parole Comm'n,* 768 F.Supp. 290, 292–93 (D.Or.1991).